CORA JONES, A MARRIED WOMAN, BY HER NEXT FRIEND, H. E. STAFFORD, *v.* J. W. JONES.

No. 1791.

ARGUED MAY 17, 1929.     DECIDED MAY 27, 1929.

PERRY, C. J., BANKS, J., AND CIRCUIT JUDGE STEADMAN IN PLACE OF PARSONS, J., ABSENT.

26

OPINION OF THE COURT BY PERRY, C. J.

This is a suit in equity for separate maintenance, based upon the grounds of failure to provide and extreme cruelty. In a cross bill the respondent asked for a divorce on the grounds of desertion and extreme cruelty. The trial judge entered a decree dismissing the cross bill and granting to the complainant separate maintenance at the rate of $175 per month. From this decree the case comes to this court by appeal.

The trial judge stated his findings of fact as follows: "Petitioner and respondent were united in marriage July 18, 1901, and have one child, a daughter, now of full age. The respondent has occupied many high positions of trust and confidence within the Territory of Hawaii during his long residence here, and at the present time is collector of internal revenue for the district of Hawaii. Both petitioner and respondent are over sixty years of age.

"The petitioner is an educated, refined and cultured woman, who has lived in Hawaii since a few years before her marriage to the respondent. At the time of her marriage to respondent she was a school teacher, and at that time had saved from her salary a substantial sum of money.

"For many years, or until about 1921, respondent and petitioner lived amicably and their marriage appears to have been a reasonably successful one until then. At about the time indicated, however, the court finds that the

respondent became interested in another woman and by his words and acts demonstrated that interest to petitioner in such manner as to cause her great annoyance, and mental and physical suffering. His conduct and demeanor towards the woman referred to, while the court does not find that this was an illicit relationship, was of a character well calculated to result, and which could and might reasonably have been expected to result in great mental anguish to the petitioner in view of the circumstances of the parties, their stations in life, and the like.

"On the occasion of petitioner's return to Hawaii in 1921 from the State of California, where she had gone, with the consent and approval of the respondent, for the purpose of placing their daughter in school, petitioner became aware of the growing infatuation for or attention lavished by the respondent upon the other woman referred to, then a next door neighbor. Remonstrances interposed by petitioner proved to be of no avail. The respondent not only refused to cease his indiscreet attentions to the woman in question, but angrily cursed and swore at petitioner while so doing.

"The respondent attempted to compel the petitioner to call upon the woman, endeavored to compel her to run errands for her, and to do other like acts, all of which could not but be a humiliation and mortification to the petitioner.

"Matters seemingly having reached an impossible situation, petitioner and respondent, in the early part of 1923, agreed that petitioner should proceed again to California, there to continue in her duties as a mother towards the daughter, who was still in attendance at school. Prior to her leaving, however, the petitioner had become so distressed, humiliated and mortified over the constant course of conduct indulged in by the respondent in cursing her, scolding, nagging and excoriating her, often in the pres-

ence of their daughter and others, together with the conduct of the respondent with respect to the other woman already alluded to, that the petitioner became very ill, necessitating the actual attention of her physician. During her illness, the court finds, the respondent did not cease in his said treatment of her, but continued while she lay on her sick bed to upbraid her, swear at her, nag her and harass her in innumerable small and petty ways.

"The petitioner last left for California in the early part of 1923 and while she was absent there the respondent was accustomed to write to her fairly regularly. His letters gave no evidence whatever of any desire in him that she return to his home in Honolulu, and the court finds as a fact that the petitioner's absence in the State of California was with the full consent, approval and wish of respondent. During this period of time, up until December of 1924, the respondent regularly remitted sums of money to the petitioner for the purpose of and which were sufficient to and did enable her to provide for herself and daughter. In December of 1924 the respondent, without having theretofore in any manner signified an intention of so doing, suddenly filed an action for divorce against the petitioner, alleging as his grounds therefor her desertion.

"In April of 1925 the respondent, purporting to act under a power of attorney which the court finds as a fact had been given to respondent by petitioner some years before for a specific purpose, later fully executed and completed, professed to convey petitioner's home on Pacific Heights to the woman referred to. The petitioner, learning of this, returned immediately to Honolulu where, notwithstanding the actions of the respondent hereinbefore set forth, she presented herself and attempted by all reasonable means to, and did actually communicate to her husband, respondent herein, her willingness to return to

him and to resume marital relations. Her attentions and offers were met with cold rebuffs and refusals. * * * There was no desertion of respondent by petitioner, but she left him and remained away from him at all times with his full knowledge, consent and approval. The charges of cruelty laid against the petitioner by respondent were that the petitioner had charged him with infidelity; that she had insulted him and his friends.; that she had refused to cohabit with him; that she spied upon his actions and that she had alienated his daughter's affections, all of which, he alleged, had seriously impaired his health. * * * Such accusations as were laid by the petitioner against respondent were but accusations of indiscreet and improper conduct on his part with the woman referred to; that the same were justified, and that at no time did she, said petitioner, on any occasion accuse him of infidelity. Likewise, the court has found no sufficient evidence justifying the respondent in his charge that petitioner had ever insulted him or his friends. Nor is there sufficient evidence that she spied upon his actions or that she refused to cohabit with him. Insofar as respondent's charge is concerned that petitioner alienated their daughter's affections, the court finds quite the reverse, for it affirmatively and clearly appears that if the daughter's affections have in fact been alienated from her father, the respondent herein, such has been due solely and alone to the vicious, unwarranted and inexcusable course of conduct indulged in by the respondent toward that daughter's mother, petitioner herein.

"The court is strengthened in its opinion that the charges of cruelty alleged by the petitioner are true by the conduct and demeanor of the respondent upon the witness stand during the progress of the trial. On some of these occasions respondent accused the petitioner of infidelity, taxing her in great detail with having acquired a

30

loathsome disease from some man not himself. The court in this connection allowed great latitude to the respondent, even going to the length of permitting respondent to cause depositions to issue to Germany for the purpose of taking the testimony of petitioner's physician there resident. These depositions were returned unanswered, but the physician in question later appeared in person and testified.

"The petitioner waived her privilege as to confidential communications between herself and her various physicians, a number of whom were called. From the testimony given by these physicians and other evidence in the case, the court finds as a fact that the accusation of respondent was wholly without merit and unwarranted.

"These charges of infidelity and of the condition testified to by respondent appear to the court to be one of many circumstances from which the court can ascertain with whom lies the fault in this cause. Although the charges of infidelity referred to might even of themselves constitute cruelty sufficient to enable the petitioner to be afforded the relief here sought, yet the court has only considered such evidence as a circumstance in arriving at a clearer conception of the attitude and conduct of the respondent toward the petitioner. Even without this circumstance, however, the court would be compelled to find that the facts alleged by petitioner are well established.

"As a result of respondent's ill treatment of petitioner, petitioner's health not only was but is still seriously impaired. While she appears from the evidence not to have been a woman of robust or strong constitution, still and nevertheless it clearly and conclusively appears from the evidence that that health has been further seriously impaired by the actions of respondent. * * * The court finds the allegations of the amended bill to have been established and grants the relief prayed for. The court

finds the allegations of the answer and cross bill not to have been established and dismisses the same."

The trial was a lengthy one. It began in August, 1926, and extended, with interruptions, until February, 1927. Many witnesses were examined on both sides. The questions of fact are all questions depending upon the credibility of the witnesses and the weight of their testimony. In their essentials the long narrative of the complainant and the long narrative of the respondent are in conflict with each other. Under these circumstances the case is clearly one in which the general rule, often applied in the decisions of this court, that great weight should be given to the findings of the trial judge, should be enforced. He saw and heard the witnesses and was in a much better position than an appellate court can possibly be to judge of the credibility of the witnesses. It may be added, however, that upon an examination of the transcript of what the parties and the witnesses testified, we have no hesitation in affirming the findings of the trial court. We make the same findings.

Undue attentions, such as those found in this case, by a husband to a woman not his wife, persisted in after repeated remonstrances from the wife, efforts by the husband to cause the wife to run errands for the other woman and in other ways to wait on her and render her and her family assistance, a constant and long continued attitude of hostility towards the wife by the husband, accompanied by gross incivility and profanity, repeated and customary nagging, scolding and harassment in many petty ways and the continuation of this attitude and these acts while the wife lies sick in bed, this conduct resulting in impairment of the wife's health such as to necessitate the attention of a physician, constitute extreme cruelty within the meaning of the law on divorce and justify a decree of separate maintenance in a suit in equity.

32

In an affidavit presented to this court after the filing of the three briefs, two by the appellant and one by the appellee, the respondent expressed dissatisfaction with the action of his attorneys in contending in the briefs prepared by them that the amount of the separate maintenance awarded was excessive and declared in substance that he did not wish to have any such contention advanced in this court. We regard this as an abandonment of the contention and therefore do not give it any further consideration and assume that the amount awarded in the decree below was correct.

The decree appealed from is affirmed.

*C. M. Hite* (*Ulrich & Hite* on the brief) for petitioner.
*C. B. Dwight* for respondent.